Our third case this morning is United States v. Trujillo, 19-2212, Ms. Messick, you may proceed. Thank you, and may it please the Court, Counsel. I'm Paige Messick for the United States. Deputy Scroggs encountered two problems after he arrested Gabriel Trujillo. First, Trujillo's Mustang was parked askew, feet from the curb, obstructing the entrance to a community. Second, they were in an area where vehicle break-ins are endemic, and there were several visible firearms strewn about the interior of that Mustang. Either of these concerns, standing alone, would have been sufficient to justify the choice that Deputy Scroggs made, a choice that dealt with both of those concerns, and that was to have Trujillo's Mustang impounded. Let me ask this, you said the environs was a crime area? Yes, Your Honor, specifically. Was that on the outside or the inside of the gate? They were outside the gate. Was the crime area delineated by the gate? There wasn't any testimony about the rate of crime outside or inside the gate. The deputy testified that Bernalillo County, specifically where they were, is a high area for vehicle thefts and break-ins. They were outside the gate. So not this immediate area? You're talking about the general area, the county, right? I think he said that where they were was an area where there are a lot of vehicle thefts, and then he also said Bernalillo County as a whole is a bad area for that kind of crime. Was this on a private property or a public right-of-way? The district court found that that was unresolved. The owner of the property was unclear. The deputy testified he thought that it was public property, but he wasn't certain. But the reasons that he thought that it was public property are relevant here, and those are because the deputy and Trujillo were on a roadway that was accessible to any member of the public, anybody like Trujillo, who just happened to turn off into that area. So it was certainly publicly accessible. And if it wasn't publicly owned, it certainly wasn't clear who it was owned by, and that's not a fact that would have been knowable to the deputy at the time. But regardless of how the court looks at this case, whether it is under Opperman or under Sanders, that's not a dispositive factor. Under Opperman, it's not a factor really at all. Opperman does not require that the vehicle to be impounded be on public property. If I may take a moment to frame the issues in dispute, as I see it, Trujillo doesn't dispute on appeal that the Mustang was an obstruction in the roadway. He doesn't dispute that guns could have been stolen out of it from where it was, and he doesn't dispute that these are legitimate concerns. His claim instead is that the deputy couldn't impound the car because they weren't his real concerns, that they were instead just a cover for the desire to uncover evidence of criminal activity. And his problem is that neither this record nor the case law can supply the fine pretext that he needs. The district court certainly didn't find pretext. The district court did find that Deputy Scraw conducted his inventory search in good faith. In other words, he was not rummaging around for evidence of criminal activity when he inventoried that car. And it's there. The officer, he made a decision to impound the car really before he knew anything specific, certainly didn't know about the firearms. Is that the point that we should, you know, the lens that we should view this case through? It's at the point he made a decision pursuant to county policy. Or should we look at the impoundment decision at the point the tow truck hooks it up? And is the timeline, is the timeline relevant? Somewhere in between there, Your Honor. I think that the court should look at it at the point that Deputy Scraw took an action that infringed on Mr. Trujillo's Fourth Amendment rights or that otherwise would have done so if it weren't justified here, which is when he began when he entered that car to begin his inventory search. The time at which he made his decision to impound the vehicle, although his decision and the reasons for it are irrelevant. At the time that he made that decision, he hadn't taken any step that would implicate the Fourth Amendment. So the correct point to evaluate his motivations for when he began to do that. And at that point, he certainly knew he had always known about the car's problem being where it was in the roadway. That existed from the beginning. And it's an independently sufficient basis. By the time he actually began the inventory, he also knew about the firearms inside of it. And at that point, he could not have simply ignored the presence of the firearms, even if some magical, miraculous solution to the car's position had at that point materialized. And his testimony, in fact, made it very clear that even if he could have moved the car, which he didn't think that would be a sufficient solution, but even if he could have moved the car, he made it clear that he could not have left that car there with those firearms. So at the point that he actually began to take actions to do the inventory or begin the impoundment, he knew both about the car's position in the roadway and the hazard that that presented, and he knew about the firearms and the danger that they presented. So those are both relevant considerations this court should take into account. The district court erred by entirely dismissing the factor of the firearms. Where exactly was the car positioned with respect to the median? Was it closer to the main road? The district court found that the car was stopped short of the median. And if you look at the picture that's on page three of the government's opening brief, it's Defendant Exhibit B. Now, you really have to look at the one that's in color and kind of zoom in. In my black and white picture here, it's not as obvious. But when you do that, you can actually see the median in the background. So you can see exactly where the car was positioned. You see the beginning of the median in the background. So the car was stopped. There's a star at the side. I'm sorry. There's a yellow star in the picture. And is that at the median? I can't really see the median in Exhibit B. This looks like that picture. What page of your brief are we on? We're on page three. So the star on the very far left, that's the deputy's car or at least one of the cars. The median is sort of at the – it is in the upper right-hand corner of the picture. At least I can make out in my poor-quality photo two bushes and then sort of a vertical line that's going up between the two bushes. Those two bushes are at the beginning of the median. The beginning meaning the part closest to the gated community or closest to the main road? Furthest away. So if you're approaching the gated community as Trujillo was, I would say the beginning of the median is the star where he would have encountered the median. And that is what you can see in the picture. So he's right there where he's almost about to be in the divided part of the entranceway. But he's not quite there. So he's still back a little bit further. This is not impassable, right? No, it was impassable, and the district court indeed found that it was. She made a factual finding that he was blocking the entrance to the gated community. The dispute was whether if the car had been moved all the way over to the median, would it still be blocking entranceway into the community? The deputy thought that it could, but the defense showed a picture that showed two cars in there side by side. So the district court found that if he had moved it, one of them could fit. But nobody disputed that it was actually obstructing traffic where it was. And I'd also point out that Opperman does not require for a car to be entirely blocking traffic. It just needs to be an impediment to traffic, to the flow of traffic, or merely an inconvenience to the community. Opperman itself involved a car that was parked in a legal parking spot on the streets of Vermillion, South Dakota, at the wrong time of night. So that car in that case wasn't impeding traffic. It was just not supposed to be parked there in the way that Trujillo's Mustang is not supposed to be parked in the middle of the entranceway to the gated community. So Opperman is not set by a very high standard for determining what an impediment to traffic, a nuisance, a hazard is. And the district court here erred by requiring it essentially to be a car that's blocking a full lane of traffic in the middle of a busy interstate. That's not the Opperman standard. Can we consider whether it was less intrusive means rather than an impoundment, securing the weapons, or moving the car to a more safe location? Well, let me address both of those. First, as for securing the weapons, deputy could not just have secured the weapons in the trunk, for instance, of that car. First, that's not an entire solution to the problem of vandalism and theft. In Dombrowski, in fact, the Supreme Court dealt with a case where a car had what they suspected, what the officer suspected was a weapon in a locked trunk. So putting it, for instance, in a locked trunk is not going to take care of the problem. The deputies also don't even know how many guns are in that car. They can see three of them, but they don't know if there are more. They don't know what's inside of those containers. And in this court's case in Johnson, it held that the presence of one gun made it clearly permissible to look for more when there was a concern about vandalism and firearms in that location. So here, there was really nothing that they could do on scene to secure those firearms that would have been satisfactory. Also, just securing the firearms doesn't take care of the problem of the car's position in the roadway. And even if they had moved it over to the curb, that is closer to the curb, that doesn't entirely alleviate the problem either. There's not supposed to be a dark car in the middle of the night parked in the active entranceway to the gated community. Even if you move it there, it's still it's still an impediment to traffic. It's still a nuisance. This court has often upheld the removal of vehicles from the roadways without any discussion of whether they pose an obstacle to traffic that is going by on the road. The cases, I would say, generally stand for the proposition that we don't just require an officer to leave abandoned vehicles littered about the roads, even if they aren't a severe safety hazard or even if they're not completely blocking traffic where they are. It was it was reasonable for him to remove that vehicle, given that there was no one else who could have taken it at the time. Let me ask two factual questions. You described Exhibit C as showing the cars side by side. They don't look side by side to me. Looks like the one on the right is parked significantly back from the other. Is that an error on my part or are they really side by side? No, Your Honor, it's not an error on your part. They're not side by side. But I think that the district court assumed that if the car further back were moved forward, it still looked like there was enough weight, enough room for it to pass. No, I would note these are both small sedans. The left most car is so far over. If you zoom in, it looks like it's actually touching the median. So the picture has definitely been taken in a way that makes it look like there's a lot of room here. But the district court did find, as a factual finding, that two cars could fit. And we don't dispute that on appeal. But the district court did not find that that disagreement with the deputy was any kind of indication that the deputy was engaged in pretext. You know, it was the middle of the night, and it was also two years ago by the time that Deputy Scraw was testifying as to whether he thought that if you moved one of the cars, it would still be a blockage of traffic. And the district court didn't say that it wasn't an innocent. There was no innocent explanation for his statement that she disagreed with. She merely found that if he had moved it, another car could have fit by. Again, that that doesn't that's not dispositive under Opperman. There's not supposed to be a car parked in any part of that in any part of that entryway and anywhere it is. It can be a hazard to a motorist who is not expecting a dark car in in that location. Under the Sanders methodology, do you think the county policy is overbroad, you know, facially overbroad? Sanders doesn't give much guidance on what an overbroad policy would look like. The court has said that a policy that mandates towing in every case of a driver arrest would would mandate to too many cases of towing. But this isn't what we have here. There was an exception here. But it doesn't really matter, even under Sanders. Under Opperman, it doesn't matter at all because Opperman doesn't require there to be a policy. But it doesn't really matter under Sanders either, because Sanders says that if there is a policy that mandates too many tows, it still checks the Sanders first box because it's not leaving too much discretion. If anything, it's leaving too little discretion. And so it checks that first box. The court then proceeds to a reasonableness analysis. And under that reasonableness analysis in Sanders, we ought to prevail even there. Judge Hart, you had a question. At what point did the officer know that defendant did not have proof of registration of his vehicle? Was that before the inventory? I don't believe that the timing of that is clear on the record, but you can be sure that before he allows someone else to come and get that vehicle, he's going to check to make sure the driver is a registered owner and Mr. Trujillo was not. Okay. He didn't have Mr. Trujillo come back to the police vehicle after the stop then. There was no discussion before he decided to impound? He did have him come back to the vehicle, but I don't believe that the record reflects at what point a discussion about registration took place or at what point he looked into the registration of the car. All right. Thank you, Counselor. Your time has expired. Let's hear from Mr. Villa. Thank you, Your Honor. May it please the court, I represent the appellee, Mr. Trujillo. We're asked the court to affirm the district court's decision as a proper analysis under Sanders. I think as a starting point, there isn't really any contention that any of the district court's factual findings were clearly alarming us. Let me ask about that because I'm concerned. And also, if you would speak up a little, I was having a little trouble hearing you. I hope you can hear me. I will. I'm sorry. I'm very curious about Exhibit C. It just looks like a distorted photograph. If there's really room between the two vehicles to get by without, you know, if there's a few inches, that's obstruction. If you're driving a car, maybe an SUV, I suspect some people in the stated community owned SUVs, you're going to be worried about hitting somebody on your right. So, if it's not at least a foot or more, maybe two feet, it's going to be obstructing. But here, the picture shows them offset. And were you the one who arranged for these pictures to be taken, Mr. Villa? Were you the, you were? I was a child counsel. I did receive. So, why wasn't the picture taken so it legitimately show the circumstance there? I mean, they could not, it's quite possible that they couldn't even fit. You couldn't put them next to each other. But you could get a picture like this taken at an angle. I'm rather disturbed about that. That seems like, I'm surprised that the judge even considered the picture, given that if what you're saying is true, it would have been so easy to take a picture that would have shown that. Can you explain this? Well, certainly, Your Honor, in retrospect, having taken more pictures at different angles with different shots would have been something I think I would do in the future. However, during the evidence you're hearing, the government didn't dispute the picture, didn't object to the picture, didn't provide any contrary information, and certainly on appeal hasn't argued that this finding was clearly erroneous. And I think that finding is important. I find it unsupported with that picture. That picture shows nothing to me. But I just thought it was very, actually it shows more than that. It shows that if they really could fit next to each other, the photographer would have taken a picture showing that. And the failure to have a picture that would prove the point, to me, totally undermines this finding. But it's not, I'm disturbed about that. But go ahead. Well, Your Honor, I think that wasn't the only fact that the court had with respect to the picture. It had Deputy Scraw's testimony about the area, you know, and didn't just make its decision based solely on this picture and its belief about Deputy Scraw's testimony regarding whether two vehicles would fit. And I think that's more of the point of Sanders, is that even if you have a potential Opperman-type justification, that doesn't end the inquiry. If this isn't a true Opperman situation, you know, the deputy's driving by this community in patrol. He sees a car parked askew. He believes it creates a danger. So he makes the determination to impound it. We have an Opperman situation, and there's probably not much of an argument beyond that. Once they saw the guns, what were their choices other than impoundment? Well, I think there's a number of choices, and I also think the guns don't end the inquiry. But to answer the court's question, the choices could be secure the firearms so they're not in view, to seek Mr. Trujillo's consent to take them for safekeeping, or provide them to somebody else that Mr. Trujillo could contact. And he wasn't a prohibited person, so he's allowed to own the firearms. They didn't need to seize them as evidence at the time he first saw them. If he's worried about firearms and he sees them, if you're saying that he should have done something with those firearms, wouldn't the officer also have a duty to look in the backpack to see if there are firearms there? After all, in Cady, they just thought this officer who had been stopped for DVDI must have had an official weapon with him, so they searched the trunk. They didn't have any specific information about the trunk. Here, you have a backpack. You've got three other weapons. Wouldn't they have necessarily had a duty to look in the backpack? And if they had, we'd be right where we are now, right? Well, I guess if you're saying if he's not impounding the vehicle, does he have a duty to look into the backpack? I don't know that the answer to that is clear. It isn't? Well, what's unclear about it? Why isn't Cady dispositive of that point? Because I think what we're talking about here is, do you leave the vehicle in a place where the firearms are visible from the street so that somebody might be tempted to break in and take them? And if they're in a backpack in the back of the trunk, they're not visible to passers-by on the street. Was the backpack in the trunk? It was. Or it may have been in the back seat, Your Honor. I thought it was in the back seat. Yeah. Go ahead. Well, the record is certainly clear about where it was. I may have misspoken. But I think the point, if we're in an operant situation, is, is this a community caretaker type function, right? So, if an officer is walking down the street or patrolling and they see a lawfully parked car with visible firearms, can they impound that vehicle for public safety community caretaker purposes? I think the answer is no, in the state of New Mexico, where it's lawful to have a firearm in the car. You might not like it. You might not want it to be there visible in the street. But unlike a car that's presenting a traffic obstruction or a danger to the public, you can't seize a lawfully or impound a lawfully parked vehicle just because you see firearms. Now, here, would it be reasonable for the officer, because he's arrested Mr. Trujillo, to take steps to secure the firearms? Absolutely. And I think that the alternatives that weren't considered by Mr. Deputy Scraw is what the district court correctly focused on when deciding, does this meet the Sanders test? You know, the deputy never considered any other alternatives because he immediately decided he was going to impound the vehicle as soon as he decided he was going to arrest Mr. Trujillo. Now, let's say he didn't do that, that he was going to arrest Mr. Trujillo, but then properly follow Sanders and determine are there alternatives to impoundment and then have to consider what should I do with these firearms? I think that there are alternatives, and those are primarily making them so they're not visible to passersby. And again, the law in New Mexico is you can have a firearm in your car and it can be visible. Is that the issue? The issue is whether there's a danger given the threat of someone breaking into the car and finding firearms, even if they weren't exposed. Am I wrong about that? I think you're right. But I think the Sanders court talked about that as a potential pretext motivation. Right. I mean, the car in Sanders was parked in a parking lot, so there wasn't an issue of needing to move it out of anybody's way. But the high crime vandalism rationale was looked at by the Sanders court as a potential pretext. And so here, you know, the question is, is it was the officer's motive in impounding the vehicle and citing to the firearms pretextual or did he have a legitimate community caretaker motive in wanting to impound the vehicle to to save those firearms or save the car from being broken into? And I think the court correctly found that he had already made up his mind. He was impounding this vehicle before he ever saw firearms. Let me ask about the obstruction of traffic issue. It would have been a close fit. Would it not for a large for an SUV to get by his car the way it was parked originally? I think that's fair. Yes. And is is that not enough under Opperman to justify the impoundment? Or are you distinguishing in Opperman on on your claim of pretext? Well, I think I'm distinguishing it on on pretext, but as well on on what this court said in Sanders about Opperman, which is that Opperman envisioned a situation where it was immediately necessary to remove the vehicle. Well, but so Sanders overruled Opperman, you're saying? No, I think Sanders was interpreting Opperman in the situation of an individual being arrested and removed from their vehicle. And it wasn't that situation. That was not necessary to decide Sanders, was it? Sanders has some strange language. It talks about imminent danger and it doesn't cite any authority. And I'm not aware of any talking about imminent. And that was dictum because it was hardly necessary to resolve that case. But if you if we look at Opperman. There you had a car when it was towed. It was in a lawful parking place. It was during the day when you could park there. It had just been parked there too long. And that was enough to justify removal here. You have a vehicle that. By any reasonable interpretation would obstruct traffic. If someone's coming in at four a.m., an hour and a half later, driving a large vehicle, looking down to get the card to get through the gate and you run into this car, you don't see you're not expecting you're not looking for a car there. It seems to me that the obstruction. I don't see how you get around the obstruction without some sort of pretext finding. And the judge didn't make that. What am I missing? Well, Judge, first, I think there is authority that Sanders cites to for its interpretation that immediacy of the danger is required. And that's the case, which was the car on the side of the highway in Wyoming. And the court found problems with the justification of those officers saying they needed to impound the vehicle because they didn't immediately move it out of the way before they searched the vehicle. Do you read that as a pretext case? I do. But I think that my second response to the court is that the findings that district court made in this case support pretext. I think that's what the second half of Sanders is really all about. When you look at the factors of public versus private alternatives to tow, all those factors were created by this court to help a district court determine if there's a pretextual motive, if there's a motive that's not community caretaking motive. How do you reconcile that with the judge's determination earlier that the inventory search was not pretextual, that the officer was not doing that just to look for evidence of crime? Because the issue in that motion was when he broke the lock on the backpack, because the backpack had a lock on it. And so the officer had to break it open or use force to open it and search the backpack. The issue raised there was that was an illegal search, but the policy of the Bernalillo County Sheriff's was clear that you had to search all the containers. And the U.S. Supreme Court case law, I think Bernheim was the case, said you can search the containers within the car. And so the judge found the officer's conduct in breaking the lock and searching the backpack was done in good faith. But this issue about his decision to impound the vehicle, which then gives you license to search all the containers within the vehicle, was not before the court when she made that finding. And she made findings on this second motion on the decision to impound that several of places where the officer testified were not credible, essentially shouldn't believe his proper community caretaker justification. And that was both with the level of danger of the car presented where it was parked, the need to secure the firearms and other reasons for that he proper as a community caretaker basis, as well as looking at the policy itself, which I think. As I understand the. The judge's ruling, she was saying, as long as another car could get could get by defendants vehicle, then it wasn't obstructing the roadway and there was no opperman justification. It is. Am I misreading the district judges reasoning. I see that I'm out of time and answer the question. Go ahead and answer please. Okay. Your Honor, I think what what she was saying was was yes, what you're saying is correct. But but she was reading that in light of the Sanders test, which says you need to scrutinize the proper community caretaker justification to see if that was really what was going on, or if instead it was pretext to do an investigation. And I think that's what she found in finding that under Sanders suppression was warranted. Thank you, counsel. Your time's expired. Case shall be submitted. And counselor. Thank you for your arguments this morning. Can I. Yes. Mr via. Of course, Mr. Mr via. Tell me why I have a wrong impression, but my impression is the Saunders only applies to parking on private property. And the section that sets forth the holding indicates that the record suggests that the Aurora municipal code explicitly authorize the impoundment from public property. And that word is emphasized. And that it says it nowhere mentions impoundment from private lots with emphasis. It goes on. To say in the next paragraph. It suggests. Okay. It says further the impoundment was unlawful for an independently sufficient reason. It was not justified by a reasonable non pretextual community caretaking rationale. It was legally parked on private property, and there is no evidence in the record that the police consulted the owners of the parking lot. Why, why doesn't that make it clear? Is that Sanders is only a private property case? Because of what the Supreme Court says, and I'll permit and burn time, which is that if you have a pretextual motivation in those two cases, where, where the vehicles were on public property. Yes, it's not a constitutional impoundment. And so imagine I'm talking about our own decision that suggests that it's limited to private property. Well, I think that it can apply to the situations where there could be pretext in a public property situation. So, imagine a residential street where a car is lawfully parked on that residential street. If you had evidence of pretext, or the officer admitted, the only reason I impounded it was to search the car. I think you could still apply Sanders to that situation. And I think, again, it should be because of the factor analysis and Sanders sort of a sliding scale. If it's on a lane of a highway, you've got a community caretaker justification. Let me ask you this. Assume you're wrong. And that Sanders applies to private property. And in this case, the judge said she didn't know whether it was public or private property. It's your motion to suppress. Isn't it your burden to demonstrate for the applicability of Sanders that it was on private property? Assuming my interpretation is correct. Yes. Assuming you're correct. No, I think it was the government's burden to prove at the suppression hearing that this was public property. And, therefore, to help support the impoundment decision. It's their burden to justify the reasonableness of the search. You mean you don't have the burden when it's your motion to suppress? I certainly think that there is a burden of production for the defendant when they file a motion to suppress. But I think the law is clear that the ultimate burden to prove the reasonableness of a Fourth Amendment encounter is on the government. Okay, counsel. Appreciate the clarification and additional questions. You are now excused and the case will be submitted. Thank you.